UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:08CV611-J

JEFFREY H. HUGHES                                                                           PLAINTIFF

VS.

MICHAEL J. ASTRUE,
    Commissioner of Social Security                                              DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Jeffrey Hughes ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be vacated and the matter remanded for further proceedings.

## PROCEDURAL HISTORY

On February 10, 2005, Claimant filed application supplemental security income payments, alleging that he became disabled as of July 3, 2001. After a hearing, Administrative Law Judge D. Lyndell Pickett ("ALJ") determined that claimant's HIV illness, bipolar depression, and history of polysubstance dependence were severe impairments that prevented him from performing any of his past relevant work. The ALJ further found that he retained the residual functional capacity to perform jobs that exist in significant numbers in the national economy. This became the final decision of the Defendant when the Appeals Council denied review on September 19, 2008.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative

proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Plaintiff argues that the ALJ committed legal error in failing to follow regulations applicable where the record includes evidence of substance abuse. The parties agree that if a claimant is determined to be disabled, the ALJ is required to determine whether disabling limitations would remain if the substance abuse ceased. Plaintiff contends that 20 C.F.R. Sec. 416.935(b)(2) *precludes* consideration of substance abuse unless and until the usual sequential evaluation is completed and results in a finding of disability, and only then is the ALJ authorized to investigate whether the other limitations would be disabling in the absence of the substance abuse.

Defendant contends that plaintiff failed to demonstrate that he met the relevant Listing,[1] regardless of whether the effects of his substance abuse are included. Listing 12.04 requires, inter alia, a demonstration of "marked" limitation in two functional domains, and evidence of this is lacking. Treating physician Dr. Vincent recorded intact attention and concentration, cognition, and

---

[1] The impairments listed in Appendix 1 of 20 CFR Part 404, Subpart P of the regulations are referred to as "the Listings").

memory, and the plaintiff's reported GAF scores[2] were in the moderate to mild range. Tr. 247-248, 250, 319-320.

The Court agrees that there is no basis for believing the ALJ would have found that plaintiff met the Listing absent consideration of substance abuse. Accordingly, the question of whether the United States Court of Appeals for the Sixth Circuit would follow the lead of the Eighth, Ninth, and Tenth Circuits is moot. Brueggemann v. Barnhart, 348 F.3d 689 (8th Cir. 2003), Bustamante v. Massanari, 262 F.3d 949 (9th Cir. 2001), Drapeau v. Mssanari, 255 F.3d 1211 (10 Cir. 2001).

Plaintiff next contends that the ALJ improperly considered substance abuse in determining Mr. Hughes' Residual Functional Capacity (RFC). As plaintiff recognizes, where subjective complaints affect RFC, the ALJ must evaluate the credibility of the testimony of witnesses, including the plaintiff. The ALJ found "the credibility of the claimant's subjective complaints (and allegedly related functional limitations) to be only fair at best." Tr. 20. It is well-established that resolving conflicts in the evidence and deciding questions of credibility are matters within the province of the ALJ. Wright v. Massanari, 321 F.3d 611 (6th Cir. 2003). Plaintiff seems to be making the legal argument that substance abuse should play no part in a credibility determination as well as a factual argument that the ALJ relied on incorrect information In making his credibility determination. The Court will address these two matters separately.

In making his credibility evaluation, the ALJ referred to inconsistencies in Mr. Hughes'

---

[2] According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 61-70 is described as appropriate for "some mild symptoms (e.g., depressed mood and mild insomnia)," but "generally functioning pretty well."

reports regarding his substance abuse. Plaintiff seems to suggest that it is inappropriate for an ALJ to consider *any* evidence that refers to use of alcohol or illicit drugs, but such an extreme position is supported by neither legal authority nor reason. Determining credibility is something everyone does on a regular basis with respect to our interactions with others. The purpose of a credibility determination is to assess how reliable a reporter the witness is. Does the witness have a good memory? Is s/he describing a condition or event in the same way a similarly-situated person might? Does s/he have reason to bend the truth? A number of different factors go into the assessment, but one factor that we all consider important in this process is whether the person who is speaking has consistently told the same story. If plaintiff's position were adopted, the law would support an anomalous situation in which an ALJ could take into consideration inconsistencies in plaintiff's reports of exercise or taking medication or eating ice cream, but could not consider such inconsistencies if they happened to involve drugs or alcohol. This is not the law, nor would it serve the interest of justice. Thus, to the extent that plaintiff is suggesting that an ALJ's credibility discussion must never touch on matters of substance abuse, the Court rejects the argument.

We turn then to the question of whether there were any other irregularities in the ALJ's credibility determination. SSR 96-7p provides instruction on credibility evaluation as follows:

> In general, the extent to which an individual's statements about symptoms can be relied upon as probative evidence in determining whether the individual is disabled depends on the credibility of the statements. In basic terms, the credibility of an individual's statements about pain or other symptoms and their functional effects is the degree to which the statements can be believed and accepted as true. When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.

20 C.F.R. § 404.1529(c) describes the kinds of evidence, including the factors below, that the adjudicator is to consider in addition to the objective medical evidence when assessing the

4

credibility of an individual's statements:

    1)    Daily activities;

    2)    The location, duration, frequency, and intensity of pain or other symptoms;
    3)    Precipitating and aggravating factors;

    4)    The type, dosage, effectiveness, and side effects of any medication taken to alleviate your pain or other symptoms;

    5)    Treatment, other than medication, received for relief of pain or other symptoms;

    6)    Any measures used to relieve pain or other symptoms (e.g., lying flat on the back, standing for 15 to 20 minutes every hour, sleeping on a board, etc.); and

    7)    Other factors concerning functional limitations and restrictions due to pain or other symptoms.

With respect to physical complaints, the ALJ pointed to medical records indicating that Mr. Hughes' HIV has been "essentially asymptomatic." Tr. 20. As noted above, the ALJ pointed to evidence that Mr. Hughes' accounts of his drug and alcohol use have not been inconsistent; inconsistency of account – regardless of the subject matter – is a basis for questioning the credibility of the witness. The ALJ also observed that plaintiff's testimony regarding the extent of his limitations was contradicted by his reports that he is able to care for his own needs, go to the library to read, clean, do laundry, and shop. Mr. Hughes has also reported creating and selling art work. In addition, the ALJ noted that Mr. Hughes' credibility was impaired by his extensive felony record. The Court finds no error in the ALJ's credibility analysis.

Plaintiff next contends that substantial evidence fails to support the ALJ's determination with regard to Residual Functional Capacity. RFC is an assessment of a claimant's remaining capacity for work once his or her limitations have been taken into account, Howard v. Commissioner, 276

F.3d 235, 239 (6th Cir. 2002); 20 C.F.R. §404.1545(a)(1). Residual functional capacity is what a claimant can still do on a sustained, regular, and continuing basis, Cohen v. Secretary of HHS, 964 F.2d 524 (1992). A claimant bears the burden or proof in establishing his or her RFC, Her v. Commissioner, 203 F.3d 388, 391-392 (6th Cir. 1999).

In reaching his RFC determination, the ALJ relied in considerable part on the assessments of "state agency medical experts in psychology." Tr. 21. The state assessment, based on examination of the records, is dated October 6, 2005. This is of particular significance given that Mr. Hughes had at that point only a six month history of mental health treatment. Included as a basis for the ALJ's findings are observations that Mr. Hughes' condition has not worsened (between 2005 and 2007), and that there had been no significant changes in medication. Thus, the ALJ implicitly recognized that relying in 2007 on the October 6, 2005 state agency mental assessment could be problematic. The Court must, therefore, examine whether substantial evidence supports the ALJ's findings with regard to lack of change in Mr. Hughes' mental or physical status.

With regard to medications, plaintiff notes that his psychiatric medications were changed eight times during the relevant time period. The ALJ points to no medical evidence that would reveal whether these changes were "significant."

An even more significant lapse appears with respect to the assertion that Mr. Hughes' condition had not worsened. There appears to be no medical evidence indicating unchanged mental status between 2005 and April of 2007. There is medical evidence suggesting change, but the ALJ rejected both Ms. Coppinger's and Dr. Watson's opinions. In part, Ms. Coppinger's evaluation was questioned as inconsistent with her treatment notes (a comparison that a finder of fact may always properly conduct). However, the ALJ also expressed concern that she did not mention Mr. Hughes'

6

substance abuse. If and when an ALJ determines that there are disabling limitations, it is then appropriate to explore whether those limitations would exist absent drug or alcohol abuse, but that was not what happened in this case. Rather, the ALJ seems to have assumed that substance abuse would account for the symptoms, such that Ms. Coppinger's failure to discuss it justified rejection of her opinion. While the difference is subtle, it is significant, particularly in a case such as this in which the question of change over time looms large.

The ALJ rejected Dr. Watson's opinion because it included reference to the employment difficulties that would be confront Mr. Hughes not only because of his psychiatric issues, but also because of "his limited work history [and] difficulty in interacting with others." Tr. 375. The Commissioner correctly notes that issues of employability are a matter of vocational, rather than medical, expertise. Nonetheless, these few words hardly represent the essence or even a critical part of Dr. Watson's evaluation. They cannot properly be treated as a poison that justifies total rejection of a four page psychological evaluation, an expert evaluation that includes the results of five different psychological tests and identifies significant psychological impairment.

Thus, the ALJ's determination of lack of change in circumstances since the date of the state agency reports is not supported by substantial evidence. Accordingly, this matter must be remanded to the Commissioner for further proceedings not inconsistent with the opinion herein.